**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT**

| | |
|---|---|
| LARRY GASTON, )<br>)<br>        Plaintiff, )<br>)<br>v. )<br>)<br>FRANCISCAN ALLIANCE, INC., )<br>)<br>        Defendant. ) | Case No. |

**COMPLAINT**

The Plaintiff LARRY GASTON (hereinafter referred to as "GASTON") and for his complaint against the Defendant FRANCISCAN ALLIANCE, INC. (hereinafter referred to as "FRANCISCAN"), states:

**COUNT I – Race Discrimination
Violation of Title VII of the Civil Rights Act of 1964,
as amended by the Civil Rights Act of 1991**

1. This action is brought for damages sustained by GASTON for reason of FRANCISCAN's violations of his civil rights under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.

2. At all times relevant hereto, GASTON was and is a citizen of the United States, is a resident of the Northern District of Illinois and is African American.

3. At all times relevant hereto, FRANCISCAN was a corporation organized and existing under the laws of the State of Indiana with its principal place of business at 2020 S. Crawford Avenue, Olympia Fields, Illinois 60461.

4. At all times relevant hereto, FRANCISCAN was a "employer" within the meaning of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.

5. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1343 and 1331.

6. Venue is appropriate in this Court pursuant to 28 U.S.C. §.1391 since the complained of conduct occurred in this District.

7. On March 15, 2018, GASTON was hired by FRANCISCAN at its Olympia Fields location to the position of Certified Surgical Technologist.

8. In his position as a Certified Surgical Technologist, GASTON was responsible for passing instruments during surgery and assisting the surgeon for orthopedic purposes.

9. Up until September 24, 2024, GASTON received favorable reviews and accolades from his superiors at FRANCISCAN and was never disciplined.

10. Since he has been employed by FRANCISCAN, it has been the policy of FRANCISCAN not to discriminate against an employee on the basis of his or her race.

11. Nevertheless, commencing in or about September, 2024, GASTON was discriminated against by FRANCISCAN because of his race.

12. In July, 2024, a new supervisor, Victoria Fuchburger (hereinafter referred to as "FUCHBURGER") (Caucasian) joined GASTON's department.

13. On August 28, 2024, FUCHBURGER introduced a new process for assigning the Emergency Call schedule.

14. Under that new process, all staff, including nurses and surgical technicians, were instructed to draw numbers from a hat to determine the order of call selection.

15. GASTRON drew number one and selected his call days accordingly.

16. However, by the following Monday, GASTON was informed that his selected dates would need to be changed because agency employees were being given priority.

17. On September 17, 2024, two agency technicians declined to renew their contracts due to disagreements with FUCHBURGER.

18. Accordingly, the call schedule had to be reassigned.

19. On October 4, 2024, GASTON was not working.

20. FUCHBURGER contacted him, however, and asked if he could cover an emergency call.

21. GASTON agreed but requested to have the following Saturday off, namely October 12, 2024, due to a personal commitment. FUCHBURGER agreed.

22. Even though FUCHBURGER agreed that GASTON would have the day off on October 12, 2024, she wrote him up that day for a "No Call, No Show."

23. FUCHBURGER did this because of GASTON's race.

24. On February 12, 2025, at approximately 1:30 p.m., FUCHBURGER entered Operating Room 9 where GASTON was assisting on a total hip arthroplasty procedure.

25. While in the operating room, the attending surgeon, Dr. William Payne, asked FUCHBURGER "Why doesn't Larry get any lunch breaks?"

3

26. FUCHBURGER responded, "All of my staff get lunch breaks—even if I have to scrub in myself. Isn't that true, Larry?"

27. GASTON responded "Not really."

28. Following the operation, FUCHBURGER contacted GASTON and told him to come to Vicky Davis (hereinafter referred to as "DAVIS"), Operating Room Manager's, office.

29. While there, FUCHBURGER questioned GASTON about being hostile to her in the operating room.

30. FUCHBURGER did this because of GASTON's race.

31. On March 10, 2025, GASTON clocked in at FRANCISCAN at 5:54 a.m. to assist Dr. Payne on a spinal fusion or a total joint procedure.

32. GASTON prepared in advance to coordinate with the nursing staff, sterile processing, and sales reps.

33. However, he was told by DAVIS to clock out, as he was not assigned to that case and would, instead, be providing breaks.

34. GASTON complied and clocked back in at 6:37 a.m.

35. At 6:38 a.m., Ryan Carr, Surgical Technician, contacted GASTON via Vocera and requested his assistance.

36. GASTON scrubbed in to help in Operating Room 9.

37. Before the operation started, FUCHBURGER and DAVIS entered the operating room and questioned why GASTSON was there.

38. CARR advised them that he asked for GASTON's help.

4

39. GASTON later attempted to discuss this incident with FUCHBURGER and expressed his concern about not being assigned to the case.

40. FUCHBURGER did not respond other than to say that CARR knows how to do it.

41. On January 29, 2025 and March 6, 2025, GASTON asked to attend counseling sessions regarding the problems he was experiencing with the Vocera device.

42. He advised that the device often failed to recognize his voice and the battery did not hold a charge.

43. After raising this concern, he was issued a new battery.

44. GASTON reiterated his concerns to FUCHBURGER and to Unit Director, Regina Glass.

45. Instead of making sure that the Vocera device worked, FUCHBURGER told GASTON that he should exhibit stronger leadership qualities.

46. On March 13, 2025, at approximately 1:45 p.m., GASTON was alerted via Vocera that FUCHBURGER was calling.

47. GASTON attempted to answer, but the device failed to respond which had frequently occurred in the past.

48. GASTON immediately attempted to return her call, but FUCHBURGER did not answer.

49. Shortly thereafter, Lucas Cruz, Charge Nurse, contacted GASTON via Vocera and informed him that FUCHBURGER wanted him to scrub a case in Operating Room 2.

5

50. While he was in the operating room, FUCHBURGER entered the room several times and asked about its estimated completion time, which frustrated the surgeon.

51. After he was done in the operating room, FUCHBURGER texted GASTON and instructed him to go to DAVIS' office.

52. Upon arrival, FUCHBURGER and DAVIS were present along with an HR representative who participated by phone. They informed GASTON that he was being terminated for misconduct due to his failure to answer Vocera messages.

53. FUCHBURGER's claimed reason for terminating GASTON was merely a pretext for the race discrimination that she engaged in when she terminated him.

54. On September 3, 2025, the Equal Employment Opportunity Commission received GASTON's charge of discrimination.

55. Pursuant to GASTON's request, on January 13, 2026, the EEOC issued GASTON a notice of right to sue. A true and correct copy of this notice is attached hereto as ***Exhibit A***.

56. Less than ninety days have expired since GASTON's receipt of this notice of right to sue.

57. FRANCISCAN's violation of GASTON's civil rights under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 has caused GASTON pecuniary damages.

WHEREFORE, the Plaintiff LARRY GASTON requests that this Court enter judgment in his favor and against the Defendant FRANCISCAN ALLIANCE, INC. as follows:

    a.    Enjoining FRANCISCAN from engaging in such unlawful employment practices;

    b.    Requiring FRANCISCAN to reinstate GASTON to his position at the rate of pay comparable to what he should have been receiving if not for the civil rights violations committed against him by FRANCISCAN;

    c.    Making GASTON whole as to all salary, benefits and seniority status that would have accrued but for the civil rights violations committed by FRANCISCAN;

    d.    Alternatively, in the event FRANCISCAN is unwilling to reinstate GASTON, GASTON should be awarded front pay;

    e.    Awarding GASTON attorney's fees, costs and prejudgment interest; and

    f.    Awarding GASTON such further relief as this Court may deem appropriate.

THE PLAINTIFF DEMANDS TRIAL BY JURY.

Respectfully submitted,

/s/ Joel F. Handler
JOEL F. HANDLER (#1115812)
One E. Wacker Drive, Suite 2505
Chicago, Illinois 60601
(312) 832-0008
jhandler@handlerlawgroup.com
Attorney for the Plaintiff,
LARRY GASTON